Amber JOHNSTON–LOEHNER, a minor child, by her next friend, Marian JOHNSTON–LOEHNER, Plaintiff,

v.

Philip O'BRIEN, Principal, Lime Street Elementary School, Lakeland, Florida, Beverly Hall, Teacher, Lime Street Elementary School, Lakeland, Florida, Lime Street Elementary School, Lakeland, Florida, Neriah Roberts, Superintendent, School District of Polk County, Northwest District, Lakeland, Florida,

School District of Polk County, Northwest District, Lakeland, Florida, John A. Stewart, Superintendent of Schools, The School Board of Polk County, Bartow, Florida, and the School Board of Polk County, Bartow, Florida, Defendants.

No. 92–1824–CIV–T–23A.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 18, 1993.

Mathew Duane Staver, Staver & Associates, Orlando, FL, for plaintiff.

Jonathan Stidham, Boswell, Stidham, Purcell, Conner, Wilson & Brewer, P.A., Bartow, FL, for defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

MERRYDAY, District Judge.

This action is before the Court on the plaintiff's November 20, 1992, motion for preliminary injunction. (Doc. 2). On December 9, 1992, the defendants filed a memorandum opposing the motion. An evidentiary hearing occurred on December 11, 1992, at which proceeding the Court heard oral argument from counsel and testimony both from the plaintiff and her minor child and from the defendant Philip O'Brien.

### Background Facts

Marian Johnston–Loehner, as a representative of her minor child, Amber Johnston–Loehner, brings this action for injunctive and declaratory relief against several Polk County school officials, including the principal of Lime Street Elementary School. The plaintiff alleges that the principal and school board violated Amber's First Amendment right to free speech by preventing Amber's distribution of a religious tract at school. In the motion before the Court, the plaintiff seeks "a preliminary injunction to restrain the defendants from enforcing or threatening to enforce the [school board] Policy and the [student] Handbook in a manner so as to obstruct Plaintiff ... from distributing free religious literature in the public elementary school she attends." The defendants assert that the Court should deny the plaintiff's motion because the principal's actions were within the scope of the school's authority to regulate the distribution of material, including religious materials, to its students.

### Findings of Fact

Amber Johnston–Loehner (Amber) is an 11–year–old, fifth-grade student at Lime Street Elementary School in Lakeland, Florida. Amber testified to her occasional desire to distribute religious tracts at her school as a means of sharing her Christian faith with her classmates.

The students at Lime Street Elementary are subject to the "Student Code of Conduct" adopted on June 23, 1992, by the School Board of Polk County. Section I(2)(E) of the Code provides:

1) Students have the right to free speech, oral and written.

2) Students have the responsibility to express and publicize their opinions and ideas in such a manner so as not to offend, slander or libel others, and to avoid disrupting the orderly process of the school.

Also, the Polk County School Board has promulgated in Chapter 8, Section 6Gx53–8.005 of the School Administration and Regulations, a policy that affects the distribution of religious and secular materials.[1] Under this policy, distribution of "noncourse" religious and secular material is subject to the supervision of the Superintendent of Schools. Section 6Gx53–8.005 restricts material approved for distribution to a designated location within the school. Under the policy, the distribution of literature in the classroom, homeroom, assemblies, or any portion of school property by staff, students, or outsiders is prohibited.

On October 30, 1992, Amber brought two brochures to school to distribute to her classmates: One was entitled "Strange Facts about You, God, and Your Mother" (See Exhibit 1); the other described "Halloween Alternative" parties sponsored by the Carpenter's Home Church in Lakeland, Florida (See Exhibit 2). Amber testified that, on that day, she intended to give the tracts only to the children in her classroom; however, she stated she would like permission to distribute tracts in the future to other students in the school.

Before class, Amber took the pamphlets to her homeroom teacher and asked for permission to distribute the brochures at a convenient time. The teacher contacted the school principal, Mr. Philip O'Brien, who came to the classroom and, after meeting with the teacher in the hallway, took the tracts to his office. The teacher then returned to the classroom and told Amber that Mr. O'Brien would not permit Amber to distribute the tracts. At the end of the school day, Amber went to Mr. O'Brien's office to retrieve her papers, and he told her that he had thrown the tracts and brochures into the garbage. Amber testified that she was upset by this because she could not share the brochures with her classmates. On cross-examination, however, she agreed that she would be willing to wait to distribute other brochures so that "the grown-ups [could] ... look at this a little longer."

On the evening of October 30, 1993, Amber's mother, Marian Johnston–Loehner, telephoned Principal O'Brien. Mrs. Johnston–Loehner testified that Mr. O'Brien told her he would not allow religious material on the campus. She questioned Mr. O'Brien about Amber's free speech rights, as described in the student handbook, and he again responded that he would not allow the religious material at school. Mrs. Johnston–Loehner maintains that on October 30, 1992, she was not aware of the school board policy

---

1. The Polk County School Board Policy, Chapter 8, School Administration and Regulations, Section 6Gx53–8.005, Religious/Secular Materials, adopted March 10, 1982, readopted April 28, 1987, provides:

I. *Superintendent's Discretion:* Non–Course religious and secular materials distribution shall be left to the discretion of the Superintendent of Schools.

II. *Distribution Guidelines:* Shall be distributed according to the following guidelines:

A. *Superintendent's Permission:* All groups desiring the distribution of literature shall have the permission of the Superintendent.

B. *Placement:* A place shall be designated within a school facility for the placement of religious and secular literature which may be supplied by outside groups or organizations for free distribution to students.

C. *Designated Location:* Literature is to be made available to students at the designated location only.

D. *Distribution:* No distribution of literature shall be undertaken through the classroom, homerooms, assemblies or on any portion of school property by staff, students or outsiders.

E. *Announcement:* an announcement shall be made that literature is available at the designated place.

F. *Employee Influence:* No school employee may comment upon the decision of any group to make available or not make available literature or in any way influence others concerning the literature or concerning the taking or reading of the literature.

regulating the distribution of literature on school property.

Mr. O'Brien testified that he does not permit the distribution of any material that is not part of the regular school curriculum without the superintendent's approval. He stated that he ordinarily refers all requests for distribution to the superintendent. However, in Amber's case, he confiscated the tracts because he believed, based on a prior incident with Mrs. Johnston–Loehner, that if he returned the brochures to Amber she would disregard his instructions and distribute the brochures without approval. According to Mr. O'Brien, in September, 1992, Mrs. Johnston–Loehner distributed a flyer at a Parent–Teacher Organization meeting without permission, after Mr. O'Brien told her that the superintendent's approval was required. A number of parents and teachers contacted Mr. O'Brien after the meeting and expressed concern about the flyers and the possible distribution of similar literature to students. Mr. O'Brien testified to his belief that school officials and parents were troubled by the distribution of religious materials to elementary students because of the malleability of the students and because of an appearance that the school endorses a particular religious belief.

Mr. O'Brien stated that he has previously applied the distribution policy to two groups: the Gideon Society and the Boy Scouts and Girl Scouts of America. Once a year, for at least the past eleven years, the school has permitted the placement of Gideon Bibles at a "designated place" outside the school's library and after approval from the superintendent. Also, the superintendent has permitted the Boy Scouts and Girl Scouts to distribute material to children in the classrooms. Mr. O'Brien has no knowledge of any other student of Lime Street Elementary requesting an opportunity to distribute literature to classmates. However, Mr. O'Brien stated that his decision to confiscate Amber's literature was not a final decision that Amber would never be permitted to distribute religious literature. He maintained that the policy permitting the distribution of literature at a designated place applies to students as well as outsiders; accordingly, he would allow Amber to place the same literature in a "designated place" pursuant to the school board policy, assuming permission from the superintendent.

### Legal Analysis

■ The plaintiff seeks a preliminary injunction on the ground that Section 6Gx53–8.005 of the school board policy for distribution of literature, as applied on October 30, 1992, to Amber Johnston–Loehner, violates Amber's constitutional right to free speech and constitutes an invalid prior restraint. Specifically, the motion for preliminary injunction states:

> That this Court issue a Preliminary Injunction restraining Defendant, its officers, agents, employees and others from enforcing or threatening to enforce the Policy and the Handbook in a manner so as to obstruct Plaintiff, her agents or coworkers from distributing free religious literature in the public elementary school she attends, and said Preliminary Injunction shall enjoin Defendants, its agents, employees, and all the persons in active concert or participation with them or any of them, from attempting to allow the aforementioned Policy and Handbook to be enforced against the Plaintiff

However, the undisputed facts show that the policy was never applied in Amber's case. Both Amber and her mother testified that Amber did not seek prior approval for the distribution of the tracts from the school superintendent. The principal admitted that, when he confiscated Amber's brochures, he was not acting pursuant to either the school board policy or his usual procedure. Instead, he stated he was reacting to the unique circumstances of this case, including the antecedent incident with Amber's mother, which he believed demonstrated her disregard for school policy. Furthermore, the principal maintained that he would permit Amber to place the literature at a "designated place" pursuant to the policy if she obtained the requisite approval from the superintendent.

The Court cannot confidently reach the controlling legal issues without resolving substantial factual questions that remain remote

and speculative.[2] Furthermore, the hardship to Amber if this Court withholds consideration is less than the hardship to the school and the public if the Court renders a premature decision. Although Amber may be temporarily deprived of the right to distribute brochures, the principal's testimony suggests that Amber may not suffer the deprivation she anticipates if she applies for permission from the superintendent. In the meantime, this Court must defer to "the comprehensive authority of the States and of school officials ... to prescribe and control conduct in the schools." *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969).

■ This Court's role is not to casually or hastily prescribe school policy. The issues concerning the operation of a school should involve school administrators, deliberating conscientiously in conjunction with parents, teachers, and the balance of the community. This is especially true at elementary schools, where teachers and administrators are charged with the difficult task of nurturing and educating young and impressionable children. The Court should intervene only in extraordinary circumstances, such as when the school's policy "directly and sharply implicate[s]" a child's basic constitutional

rights. *Board of Education, Island Trees Union Free School District No. 26 v. Pico,* 457 U.S. 853, 866, 102 S.Ct. 2799, 2808, 73 L.Ed.2d 435 (1982). In this case, the school has not thoughtfully and purposefully applied or perhaps even defined its policy. The Court, mindful of the need for prudential and considered action by both the Court and the school officials, should decline to intervene until the policy is applied and, perforce that considered application, clarified for the purpose of judicial review.

Accordingly, upon consideration, the plaintiff's motion for preliminary injunction is **DENIED.** (Doc. 2). The plaintiff's motion for waiver of posting a security bond in obtaining a preliminary injunction is **DENIED** as moot. (Doc. 5). The plaintiff's motion for a temporary restraining order (Doc. 10) is **DENIED** as moot in light of the Court's granting of the plaintiff's subsequent motion for an evidentiary hearing on the plaintiff's motion for preliminary injunction (Doc. 13). Finally, the plaintiff's motion for leave to file a legal memorandum in excess of 20 pages (Doc. 15) is **GRANTED,** as the Court already has accepted, filed, and considered the memorandum.

ORDERED.

---

**2.** This Court recognizes that an anticipatory challenge to school policy may be ripe if the undisputed facts show that the school has consistently adhered to a particular policy. *See, e.g., Berger v. Rensselaer Central School Corporation,* 766

F.Supp. 696 (N.D.Ind.1991). However, the undisputed testimony presented in Amber's case demonstrates that the school policy has never been applied to the distribution of religious material to elementary school students by a student.

Exhibit 1

STRANGE FACTS ABOUT YOU, GOD, AND YOUR MOTHER.

"Can a woman forget her nursing child,
And have no compassion on the son of her womb?
Even these may forget, but I will not forget you."
(Isaiah 49:15)

## Fact no.4:

God (unlike your Mother) did more than just make you feel guilty about sin.

He sent Yeshua, the Jewish Messiah, to relieve your guilt by paying the price for your sin.

## Fact no.5:

Do you want to experience a new birth? God invites you (and your Mother, too) to enter His Eternal Family.

Try it, you'll like it!

for more "Strange Facts" Contact:

Baruch Goldstein
% JEWS FOR JESUS®
60 Haight St.
San Francisco, CA 94102
415/864-2600

BR# 226 · PRINTED IN U.S.A. · ART BY CAROL

Please, do not litter!

Exhibit 2

HALLOWEEN ALTERNATIVE!
Sat., Oct. 31 Lakeland, FL    7:00 p.m

ADVENTURES IN
AgapeLand
ON·TOUR
WITH SPECIAL GUESTS
Psalty & The Friendship Company!

ONLY FLORIDA APPEARANCE!
The whole family will enjoy this production
which is of equal quality to *DISNEY ON ICE*
or *SESAME STREET LIVE*

Carpenter's Home Church
777 Carpenter's Way
(813) 859-1477, Ext. 117

$9.50 At Door
$8.50 Advance
$7.50 Group Rate - 10 or More
Infants Less Than One Year Old - FREE
Tickets available through TICKETMASTER
and selected Christian Bookstores.

$1 Off Coupon
AGAPELAND Admission
Coupons redeemable at the
CARPENTER'S SHOP BOOKSTORE,
Church Lobby Ticket Table, or
at the door, for the $1 off TICKET PRICE.

HARVEST PARTY!
Sat  Oct. 31, 1992
K-4 through 5th Grade Invited!

4:00 - 6:30PM, In front of the CCLC
CARPENTER'S HOME CHURCH
777 Carpenter's Way
Lakeland, FL
(813) 859-1477, Ext. 330

FOOD
FUN
GAMES/PRIZES
DUNKING BOOTH
COSTUME CONTEST
(NO Scary outfits, Please!)

HALLOWEEN ALTERNATIVE!